UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ARTEISHA KIARA HARRIS,

                            Plaintiff,

v.                                                          5:15-CV-0938
                                                            (GTS)

CAROLYN W. COLVIN
Acting Commissioner of Social Security,

                            Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OLINSKY LAW GROUP                           HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                 DAVID B. MYERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Arteisha Kiara Harris,

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings. (Dkt. Nos. 13, 15.) For the reasons set forth below, Plaintiff's motion for

judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is

granted.

# I. RELEVANT BACKGROUND

## A. Factual Background

Plaintiff was born on April 26, 1992. Plaintiff graduated from high school, attended one semester of community college, and has no past work. Generally, Plaintiff's alleged disability consists of attention deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder (ODD").

## B. Procedural History

On May 7, 2010, Plaintiff applied for child's Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning April 2, 2010, when she was 17 years old. Plaintiff's application was initially denied on June 16, 2010, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). On June 22, 2011, Plaintiff appeared in a video hearing before the ALJ, Susan Wakshul. (T. 358.) On July 28, 2011, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (*Id.*) On November 16, 2011, the Appeals Council denied Plaintiff's request for review, after which Plaintiff filed an action in the United States District Court for the Northern District of New York. (*Id.*) On June 30, 2014, pursuant to a Decision and Order entered by the District Court on September 18, 2013, the Appeals Council remanded the case for further administrative proceedings. (T. 378-80.)

On February 25, 2015, Plaintiff appeared in a second video hearing before the ALJ, Marie Greener. (T. 381-401.) On June 4, 2015, the ALJ issued a second written decision finding Plaintiff not disabled under the Social Security Act. (T. 355-77.) The ALJ's decision became the final Agency decision on the 61st day following the ALJ's decision. Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 361-71.) First, the ALJ found that Plaintiff had not attained age 22 as of April 25, 2010, and has not engaged in substantial gainful activity since the date of her eighteenth birthday. (T. 361.) Second, the ALJ found that Plaintiff's learning disability, attention deficit hyperactivity disorder ("ADHD"), mood disorder, anxiety disorder, and history of poly-substance abuse are severe impairments.[1] (T. 361-64.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings"). (T. 362-64.) The ALJ considered Listings 12.02, 12.03, 12.04, 12.05, 12.06, 12.08, and 12.09. (*Id.*) Fourth, the ALJ found that Plaintiff

> has the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels. The claimant retains the ability to engage in unskilled work which does not require following more than simple short instructions. Additionally, the claimant is able to engage in work that requires no more than simple decision-making with routine daily tasks and duties in the same workplace which do not significantly change in pace or location on a daily basis.

(T. 364-69.) Fifth, the ALJ found that Plaintiff has no past relevant work. (T. 369.) Sixth, and finally, the ALJ found that there are other existing jobs in the national economy that Plaintiff can perform. (T. 370-71.)

### D.    The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff asserts three arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ improperly determined that her mental impairment

---

[1]    The ALJ noted that, during any given encounter, mental health professionals diagnosed Plaintiff with various mental impairments and characterized her mental impairments in various ways. (T. 361.) The ALJ stated that, by finding that Plaintiff had severe mental impairments, however characterized, all symptoms affecting her mental functioning were considered. (*Id.*)

did not meet Listing 12.05(C) for intellectual disability. (Dkt. No. 13, at 16-20 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence because it is the product of legal errors in weighing the opinion evidence of record. (*Id.* at 20-25.) More specifically, Plaintiff argues that the ALJ (1) should have afforded controlling weight to the joint opinion of treating psychiatrist Joseph Zollo, M.D., and treating counselor Kay Levering, L.C.S.W.; and (2) erred in affording significant weight to the opinion of State agency psychological consultant, T. Harding, Ph.D. (*Id.*) Third, and finally, Plaintiff argues that the ALJ erred in referencing Plaintiff's noncompliance with her mental health treatment in assessing her credibility, and the ALJ's credibility determination is not supported by substantial evidence. (*Id.* at 25.)

Generally, Defendant makes three arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ's step three finding that Plaintiff did not meet Listing 12.05 is supported by substantial evidence. (Dkt. No. 15, at 5-7 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly considered the medical opinion evidence in formulating the RFC, which is supported by substantial evidence. (*Id.* at 11-12.) Third, and finally, Defendant argues that the ALJ's credibility determination is supported by substantial evidence. (*Id.* at 21-24.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if

the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.    ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated below.

### A.    Whether the ALJ's Assessment of the Mental Opinions was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 15, at 11-21 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999).  "Work-related mental activities generally required by competitive, remunerative work include the abilities to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."  SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).

"In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work."  *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]).  The ALJ must consider medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms.  20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e).  The

ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources, such as social workers, to show how a claimant's impairments may affect his or her ability to work.  20 C.F.R. §§ 404.1513(c)(d), 416.913(c)(d).  Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012).  Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion.  *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the source's examination relationship and treatment relationship with the plaintiff, including the length, nature, and extent of the treatment relationship, if applicable, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record.  20 C.F.R. §§ 404.1527(c), 416.927(c); *Halloran*, 362 F.3d at 32 (listing regulatory factors).

### i.      Consultative Examiner Jeanne Shapiro, Ph.D.

On December 29, 2014, Dr. Shapiro performed intelligence and psychiatric evaluations of Plaintiff and provided an opinion of Plaintiff's mental work-related abilities and limitations. (T. 797-812.)  Dr. Shapiro administered WAIS-V testing indicating that Plaintiff had a full scale IQ score of 64.  (T. 815.)  Dr. Shapiro diagnosed Plaintiff with mild intellectual disability and unspecified bipolar and related disorder (well-controlled).  (T. 817.)

Dr. Shapiro opined that, vocationally, Plaintiff appeared to have no limitations understanding and following simple instructions and directions; performing simple tasks; maintaining attention and concentration for tasks; learning new tasks; dealing with stress; and could relate to and interact well with others.  (T. 817-18.)  Dr. Shapiro opined that Plaintiff appeared to have moderate limitations performing complex tasks; mild to moderate limitations attending to a routine and maintaining a schedule; and mild limitations making appropriate decisions.  Dr. Shapiro noted that Plaintiff's difficulties are caused primarily by cognitive deficits and Plaintiff stated that her psychiatric symptoms were well-controlled.  (T. 818.)

Upon examination, Dr. Shapiro observed that Plaintiff appeared relaxed and comfortable; her demeanor and responsiveness to questions were cooperative; and her manner of relating, social skills, and overall presentation were adequate.  (T. 799.)  Dr. Shapiro observed that Plaintiff's thought processes were coherent and goal-directed with no evidence of delusions, hallucinations, or disordered thinking; her affect was congruent with her thoughts and speech; her mood was calm and her sensorium was clear; and she was oriented times three.  (*Id.*)  Dr. Shapiro further observed that Plaintiff's intellectual functioning was in the deficient range, but her attention and concentration and recent and remote memory skills were intact, and her insight and judgment were fair.  (*Id.*)  Dr. Shapiro noted that Plaintiff did not report any significant

depressive, manic or anxiety related symptoms, or symptoms of a formal thought disorder, hallucinations, delusions, obsessions, compulsions, phobias, or paranoia. (T. 798.) Finally, Dr. Shapiro noted that Plaintiff reported that her symptoms were well-controlled with her treatment, including medication. (*Id.*)

The ALJ afforded great weight to Dr. Shapiro's opinion due to her programmatic expertise, examination and interview of Plaintiff, and the consistency of her opinions with the overall evidence. (T. 368.) The Court finds that the ALJ's assessment of Dr. Shapiro's opinion was supported by substantial evidence for the following reasons.

First, an ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Second, the ALJ properly applied the regulations in evaluating Dr. Shapiro's opinion by considering Dr. Shapiro's professional credentials, programmatic expertise, examination relationship with Plaintiff and examination notes, and the consistency of the opinion with the record as a whole pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c). (T. 361-69.) Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to

review each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where a plaintiff challenged the ALJ's failure to review each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear"). Accordingly, the ALJ's assessment of Dr. Shapiro's opinion was supported by substantial evidence and remand is not required on this basis.

### ii.     State Agency Psychological Consultant T. Harding, Ph.D.

On June 10, 2010, Dr. Harding reviewed Plaintiff's medical records and provided an assessment of her mental work-related abilities and limitations. (T. 292-94.) Dr. Harding opined that, while Plaintiff may have difficulty with complex tasks and instructions, Plaintiff maintains the ability to perform a range of entry level work. (T. 294.) The ALJ afforded significant weight to Dr. Harding's opinion due to his programmatic expertise and the relative consistency of his opinion with the overall medical evidence, including the updated medical evidence and Dr. Shapiro's opinion . (T. 368.)

Plaintiff argues that the ALJ erred in affording significant weight to Dr. Harding's opinion based on the "law of the case" doctrine because the District Court's decision of July 28, 2011, found that Dr. Harding's opinion was not entitled to any great weight because it was based upon an incomplete assessment of the evidence. (Dkt. No. 13, at 21-22 [Pl.'s Mem. of Law].) "The law of the case doctrine, while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ali v. Mukasey,* 529 F.3d 478, 490 (2d Cir. 2008) (internal citation and quotation marks omitted.)

Here, the ALJ obtained new evidence to develop the record upon remand and the ALJ and did not rely on Dr. Harding's opinion alone in formulating the mental RFC. (T. 365-69.) Rather, the ALJ afforded great weight to the December 2014 opinion of consultative examiner Dr. Shapiro that was obtained upon remand. (T. 361-69.) Even without considering Dr. Harding's opinion, the ALJ's mental RFC determination was supported by substantial evidence, including Dr. Shapiro's opinion. (T. 368.) Therefore, even if the ALJ erred in evaluating Dr. Harding's opinion it would be harmless. *See Zabala v. Astrue,* 595 F.3d 402, 409 (2d Cir. 2010) (finding that remand for an error was not required when application of the correct legal principles could only lead to the same conclusion.) For these reasons, remand is not required on this basis.

### iii. Treating Psychiatrist Joseph Zollo, M.D., and Treating Counselor Kay Levering, L.C.S.W.

On September 16, 2010, Dr. Zollo and Ms. Levering provided a joint opinion of Plaintiff's mental work-related abilities and limitations due to her Attention Deficit Disorder ("ADD"), reading disorder, and mathematics disorder. (T. 300-04.) Dr. Zollo and Ms. Levering jointly opined that Plaintiff was "unable to meet competitive standards"[2] in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; and was "seriously limited"[3] in her ability to sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; perform at a consistent pace without an

---

[2]     The assessment form stated that "unable to meet competitive standards" means that an individual cannot satisfactorily perform the activity independently, appropriately, effectively, and on a sustained basis in a regular work setting. (T. 303.)

[3]     The assessment form stated that "seriously limited" means that an individual's ability to function in this area would frequently be less than satisfactory in any work setting. (T. 303.)

unreasonable number and length of rest periods; respond appropriately to changes in a routine work setting; deal with normal work stress; and travel in unfamiliar places. (*Id.*)

Dr. Zollo and Ms. Levering further opined that Plaintiff was "limited but satisfactory" in her ability to remember work-like procedures; understand and remember very short and simple instructions; maintain attention for a two-hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; be aware of normal hazards and take appropriate precautions; interact appropriately with the general public; maintain socially appropriate behavior; and use public transportation. (*Id.*) Finally, Dr. Zollo and Ms. Levering opined that Plaintiff would likely be absent from work about two days per month. (T. 304.)

The ALJ afforded little weight to the joint opinion of Dr. Zollo and Ms. Levering because it is inconsistent with the overall medical evidence, including their own treatment notes; treatment notes from primary care treating physician Dr. John Charles, M.D.; and the mental opinions of Dr. Shapiro and Dr. Harding. (T. 369.) The ALJ noted that the entirety of the mental health treatment notes from Dr. Zollo and Ms. Levering showed that Plaintiff had occasional reports of anger outbursts, some conflict with family members, and Global Assessment of Functioning ("GAF") scores reaching as low as 40 or 45;[4] but also showed that

---

[4] The GAF "rates overall psychological functioning on a scale of 0-100 that takes into account psychological, social, and occupational functioning." *Zabala*, 595 F.3d at 405 n.1. A GAF score of 31 to 40 indicates some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (*e.g.*, depressed man or woman avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school.) American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. rev. 2000) ("DSM-IV"). A GAF score of 31 to 40 indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). (*Id.*)

Plaintiff had friends, generally interacted well with others, and had GAF scores reaching as high as 75,[5] particularly when Plaintiff was compliant with recommended medical treatment. (*Id.*) Moreover, the ALJ noted that Dr. Zollo and Ms. Levering's opinion that Plaintiff would likely be absent from work about two days per month was unsupported by an explanation or cited clinical findings. (*Id.*); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c)(3) (stating that the more a medical source presents evidence to support an opinion, particularly medical signs and laboratory findings, the more weight will be afforded to the opinion).

The ALJ cited substantial medical evidence that was inconsistent with Dr. Zollo and Ms. Levering's restrictive joint opinion of Plaintiff's mental abilities and limitations. (T. 367.) For example, the ALJ noted that Dr. Zollo's own treatment records consistently noted that Plaintiff responded well to his medication management. (T. 369.) Additionally, the ALJ noted that, in November 2010, treating primary care physician, Dr. Charles, observed that Plaintiff's ADHD was well-controlled with medication. (T. 367. ) The ALJ further noted that, in July 2014, a physician assistant at Dr. Charles' office noted that overall Plaintiff was doing much better with her bipolar disorder and had been taking Depakote with good relief. (*Id.*)

In sum, the Court finds that the ALJ properly applied the regulations in evaluating the joint opinion from Dr. Zollo and Ms. Levering. As discussed above, the ALJ considered Dr. Zollo and Ms. Levering's respective professional credentials, treatment relationship with Plaintiff, treatment notes, and cited inconsistencies between the opinion and other substantial evidence in the record pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c), including Dr. Charles' treatment notes and Dr. Shapiro and Dr. Harding's opinions discussed above. (T. 361-69.)

---

[5]    A GAF score of 71 to 80 indicates that if symptoms are present, they are transient and expectable reactions to psychological stressors (*e.g.*, difficulty concentrating after family argument); no more than slight impairment in school, occupational or school functioning (*e.g.*, temporarily falling behind in schoolwork).

Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where a plaintiff challenged the ALJ's failure to review each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

For these reasons, the Court finds that the ALJ's assessment of the mental opinion evidence was supported by substantial evidence, and remand is not required on this basis.

**B.      Whether the ALJ Properly Evaluated Plaintiff's Mental Impairments Under Listing 12.05**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 15, at 5-11 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

A plaintiff will be found disabled if the individual has an impairment, or combination of impairments, that meets or equals one of the Listings and meets the duration requirement.  20 C.F.R. §§ 404.1520(d), 416.920(d).  The burden is on the plaintiff to present medical findings that his or her impairment meets or equals a Listing.  *Davis v. Astrue,* 09-CV-0186, 2010 WL 2545961, at *3 (N.D.N.Y. June 3, 2010).  A plaintiff must show that his or her impairment meets or equals *all* of the specified medical criteria of a Listing.  *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (superceded by statute on other grounds).  If a plaintiff's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify for the Listing. *Sullivan,* 493 U.S. at 530.

Listing 12.05, intellectual disability (formerly called mental retardation), states in pertinent part:

> Listing 12.05, Intellectual disability: Intellectual disability refers to significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Part 404, Subpart P, App. 1 § 12.05.

Accordingly, to meet or equal Listing 12.05, a plaintiff must make a threshold showing that he or she has significantly subaverage general intellectual functioning with deficits in adaptive functioning, initially manifested prior to age 22. 20 C.F.R. Part 404, Subpart P, App. 1 § 12.05; *see also Burnette v. Colvin,* 564 F. App'x 605, 607-08 (2d Cir. 2014); *Talavera v. Astrue*, 697 F.3d 145, 152 (2d Cir. 2012).

"The term 'adaptive functioning' refers to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age. Indicators of adaptive behavior include . . . educational and social achievements." *Lyons,* 2014 WL 4826789, at *11 (quoting POMS DI 25415.056 D2). An individual has a deficit in adaptive functioning when he or she "is unable to satisfactorily cope with the challenges of ordinary life, including living on one's own, taking care of children without help sufficiently well that they have not been adjudged neglected, paying bills, and avoiding eviction." *Burnette,* 564 F. App'x at 607 (quoting *Talavera*, 697 F.3d at 153) (internal quotation marks and citations omitted).

"Courts have found circumstantial evidence, such as the following, sufficient to infer deficits in adaptive functioning prior to age 22: evidence a claimant attended special education

classes; dropped out of school before graduation; or had difficulties in reading, writing, or math." *Lyons*, 2014 WL 4826789 at \*9 (quoting *Decarlo,* 2009 WL 1707482, at \*6) (internal citations and quotation marks omitted).  However, a plaintiff does not suffer from deficits in adaptive functioning where he or she can "dress, bathe, manage money, communicate effectively, do simple math and take care of personal needs."  *Orton v. Astrue,* 11-CV-0630, 2013 WL 3328025, at \*10 (N.D.N.Y. July 2, 2013) (quoting *Edwards v. Astrue,* 07-CV-0898, 2013 WL 3701776, at \*8 [Sept. 16, 2010]) (internal quotation marks omitted).

First, substantial evidence supports the ALJ's finding that Plaintiff did not satisfy her threshold burden of establishing that she has "deficits in adaptative functioning" as required under Listing 12.05. 20 C.F.R. Part 404, Subpart P, App. 1 § 12.05; *see also Burnette,* 564 F. App'x at 607-08; *Talavera*, 697 F.3d  at 152.  The ALJ noted that Plaintiff attended regular education classes in the Syracuse City School District (with resource room services every other day in a small group), graduated from high school with a regular education diploma, and attended one semester of community college.  (T. 365-66).  The ALJ found that Plaintiff does not have significant deficits in adaptive functioning, as demonstrated by her reported activities of daily living.  (T. 364.)  For example, the ALJ noted that Plaintiff dresses, bathes, and grooms herself; cares for her son; cooks with a microwave; prepares simple foods; performs general cleaning; does laundry; and uses the computer, including Facebook.  (T. 361-69.)  The ALJ further noted that Plaintiff attends church once a week, takes the bus, generally gets along well with her parents, enjoys going to Bingo with her parents, and goes out with friends.  (*Id.*)

Accordingly, substantial evidence supports the ALJ's conclusion that Plaintiff does not have the necessary deficits in adaptive functioning to meet or equal Listing 12.05.  *See Bonet ex. rel. T.B. v. Colvin,* 523 F. App'x 58, 59 (2d Cir. 2013) ("whether there is substantial evidence

supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision.") (citation omitted); *accord Orton,* 2013 WL 3328025, at *11 (stating that, if supported by substantial evidence, the ALJ's finding must be sustained even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the ALJ's) (internal quotation marks and citations omitted).

Turning to the additional requirements to meet Listing 12.05(C), a plaintiff must have "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, App. 1 § 12.05(C); *Burnette,* 564 F. App'x at 608. The ALJ noted that Dr. Shapiro's standardized intelligence evaluation in December 2014 indicated that Plaintiff's IQ scores ranged from 64 to 74. (T. 364.) However, the ALJ noted that standard intelligence testing administered by Plaintiff's school district in November 2007 indicated that Plaintiff's IQ scores ranged from 85 to 94. (*Id.*) The ALJ further noted that Plaintiff's treating mental health practitioners, Dr. Zollo and Ms. Levering, declined to check boxes indicating that Plaintiff had a low IQ or reduced intellectual functioning in their medical source statement. (T. 364.) Instead, Dr. Zollo and Ms. Levering stated that Plaintiff had a full-scale IQ score of 87. (*Id.*) Moreover, the ALJ noted that, upon mental status examination on September 24, 2014, treating psychiatrist Ahmed Nizir, M.D., observed that Plaintiff had average intelligence and cognitive abilities. (*Id.*)

Plaintiff argues that the ALJ improperly discounted the full scale IQ score of 64 from Dr. Shapiro based on the outdated November 2007 IQ scores obtained when Plaintiff was 15 years

old.  (Dkt. No. 13, at 16-17 [Pl.'s Mem. of Law].)  However, as discussed above, the ALJ did not discount the IQ score from Dr. Shapiro based on the earlier IQ scores alone.  Rather, the ALJ noted that the IQ score from Dr. Shapiro was inconsistent with other substantial medical evidence of record, including the reports of Plaintiff's IQ and intellectual functioning from treating mental health practitioners, Dr. Zollo and Ms. Levering, and Dr. Nizir.  *See Burnette,* 564 F. App'x at 608 (finding that the ALJ properly exercised his discretion in affording little weight to the IQ score found by the consultative psychological examiner, finding that it was inconsistent with the record as a whole) (citing, *inter alia, Baszto v. Astrue*, 700 F. Supp. 3d 242, 248 [N.D.N.Y. 2010]).

In any event, even if the ALJ erred in assessing Plaintiff's IQ score from Dr. Shapiro, it would be harmless because substantial evidence supported the ALJ's determination that Plaintiff did not meet her threshold burden of establishing that she has deficits in adaptative functioning as required under Listing 12.05.  *See Zabala,* 595 F.3d at 409 (2d Cir. 2010) (finding that remand for an error was not required when application of the correct legal principles could only lead to the same conclusion.)

For these reasons, the ALJ's finding that Plaintiff did not meet or equal Listing 12.05 was supported by substantial evidence and remand is not required on this basis.

### C.   Whether the ALJ's Credibility Analysis Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 15, at 21-24 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* (citing §§ 404.1529[c][3][i]-[vii], 416.929[c][3][i]-[vii]). Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the

credibility of witnesses,' including with respect to the severity of a claimant's symptoms."
*Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms are not entirely credible. (T. 367.) Plaintiff argues that the ALJ erred by referencing Plaintiff's noncompliance with her mental health treatment in assessing her credibility. (Dkt. No. 13, at 25 [Pl.'s Mem. of Law].)

A plaintiff may be deemed less credible "if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96-7p, 1996 WL 174186, at *8 (July 2, 1996). However, an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment without first considering "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p 1996 WL 174186, at *8 (July 2, 1996). Moreover, reviewing courts have found that "faulting a person with diagnosed mental illness for failing to pursue mental health treatment is a 'questionable practice.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 207 (N.D.N.Y. 2012) (quoting *Day v. Astrue*, 07-CV-0157, 2008 WL 63285, at *5 n.6 [E.D.N.Y. Jan. 3, 2008]).

Here, while the ALJ noted that Plaintiff was noncompliant with her mental health treatment, the ALJ did not base her credibility assessment on that one factor alone. (T. 361-69.) Throughout the decision, the ALJ articulated the inconsistencies that she considered in assessing the allegations of Plaintiff's symptoms, and in determining that Plaintiff is not as limited as alleged. (*Id.*)

First, the ALJ considered medical evidence that was inconsistent with Plaintiff's allegations of disabling symptoms, including the opinions of Dr. Shapiro and Dr. Harding discussed above in Part III.A. of this Decision and Order. (T. 361-69.) Second, the ALJ considered inconsistencies between Plaintiff's statements regarding her alleged symptoms and limitations and the medical evidence of record. (T. 361-69.) For example, the ALJ noted that Plaintiff reported difficulty with concentrating and focusing, however, Dr. Shapiro observed that Plaintiff's attention and concentration were in tact and opined that Plaintiff appeared to have no limitation maintaining attention and concentration for tasks. (T. 361-69, 817.) Additionally, Plaintiff reported to Dr. Shapiro that her symptoms were well-controlled with her mental health treatment, including medication. (T. 798.)

Third, the ALJ considered the measures that Plaintiff took to relieve her symptoms, including psychotherapy, counseling, and medication management. (T. 367.) Moreover, the ALJ noted that treatment records from treating psychiatrist Dr. Zollo and treating primary physician Dr. Charles indicated that Plaintiff responded well to her medication management. (*Id.*) Fourth, the ALJ considered inconsistencies in Plaintiff's reports regarding her symptoms and activities of daily living. (T. 361-69.) For example, the ALJ noted that Plaintiff cares for her son, maintains adequate self-care, cook with a microwave and prepare simple foods, performs general cleaning, does laundry, uses the computer, attends church once a week, takes the bus sometimes, generally gets along well with her parents, enjoys going to Bingo with her parents, and goes out with friends. (T. 365-66.)

Accordingly, the Court finds that the ALJ's credibility assessment is supported by substantial evidence. When the evidence of record "permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or

have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Here, the ALJ complied with the Regulations and articulated the inconsistencies that she considered in discrediting Plaintiff's allegations of disabling impairments.

Therefore, the ALJ's overall decision to discount Plaintiff's allegations was supported by substantial evidence even without considering Plaintiff's noncompliance with her mental health treatment. *See Schlichting v. Astrue*, 11 F. Supp. 3d 190, 206-07 (N.D.N.Y. 2012) (finding that the ALJ's error in making an adverse inference from a plaintiff's failure to pursue treatment was harmless error where the credibility analysis was supported by substantial evidence). Accordingly, even if the ALJ erred by referencing Plaintiff's noncompliance with her mental health treatment, it would be harmless under the circumstances. (*Id.*)

For these reasons, the ALJ's credibility determination was supported by substantial evidence and remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: October 28, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge